Cheryl VAN HUSS, et al.,
Plaintiffs–Appellants,

v.

Charles Edwin SHOFFNER, Jr., individually and in his official capacity as Sheriff of Claibourne County, Tennessee, Defendant–Appellee.

No. 02–5214.

United States Court of Appeals,
Sixth Circuit.

Nov. 6, 2003.

Anthony A. Seaton, Johnson City, TN, for Plaintiff–Appellant.

Dean B. Farmer, Keith L. Edmiston, Hodges, Doughty & Carson, Knoxville, TN, for Defendant–Appellee.

Before MARTIN and SUTTON, Circuit Judges; and MILLS, District Judge.*

SUTTON, Circuit Judge.

Ten individual plaintiffs sued Claibourne County Sheriff Charles Shoffner under 42 U.S.C. § 1983, alleging that he had fired them in retaliation for exercising their First (and Fourteenth) Amendment rights of political association. The district court granted summary judgment to Shoffner as to seven of the ten plaintiffs. The remaining plaintiffs tried their case before a jury and lost. On appeal, the plaintiffs challenge (1) the district court's summary-judgment rulings, (2) the court's decision to grant Shoffner a directed verdict with respect to all claims filed against him in his official capacity, (3) a portion of the court's jury instructions, and (4) the court's refusal to instruct the jury on punitive damages. Concluding that these arguments are unavailing, we AFFIRM.

I.

This case arises out of several employment decisions made by a newly-elected public official in Claibourne County, Tennessee. On August 4, 1998, Charles Ed-

* The Honorable Richard Mills, District Court Judge for the Central District of Illinois, sitting by designation.

win Shoffner, Jr. defeated incumbent Bruce Seals in a local election for county sheriff. Shoffner took office on September 1, 1998, and immediately appointed Wayne Lee as his administrative assistant and Kyle Payne as his chief deputy.

Lee and Payne assisted Shoffner in evaluating the forty employees of the sheriff's office and in determining who would stay and who would leave. After this assessment, Shoffner fired fifteen of the employees who had worked in the sheriff's department under Seals, including the ten plaintiffs in this case—Cheryl Van Huss, Mark Lewis Brock, Birtie Katherine Daniels, John David Breeding, Alice Katherine Breeding, Jay Partin, David Lee Brown, Russell Wayne Hampton, Kyle "Sonny" Brock, and Mary Jo Baird.

After these terminations, Shoffner (together with Lee and Payne) conducted a series of job interviews over the course of four days to fill the fifteen vacancies. Employees who had been fired were permitted to submit applications to be rehired for other jobs within the sheriff's department. Due to "tremendous" time pressures to submit his plans to the county commissioner for approval, however, Shoffner did not interview all of the candidates. Many of the plaintiffs submitted applications for other positions, but none was rehired. Shoffner retained final decisionmaking authority over these hiring and firing decisions, although he relied on the advice of Lee and Payne, among others, in making these decisions.

In subsequently bringing this claim under 42 U.S.C. § 1983, plaintiffs allege that they were fired in retaliation for failing to associate themselves politically with Shoffner, and that the firing violated their First and Fourteenth Amendment rights. The district court granted summary judgment to Shoffner in both his individual and official capacities as to seven of the plaintiffs—Cheryl Van Huss, Mark Brock, Birtie Daniels, Jay Partin, Russell Hampton, Kyle Brock, and Mary Jo Baird—and in Shoffner's individual capacity as to one of the plaintiffs—David Brown. The remainder of the suit, involving plaintiffs John and Alice Breeding as well as David Brown's official-capacity claim, proceeded to trial. At the close of the evidence, the district court dismissed all claims against Shoffner in his official capacity, eliminating plaintiff Brown from the suit altogether.

During the trial, two jury-instruction disputes arose. First, over plaintiffs' objection, the court instructed the jury that they should find in favor of the Breedings only if they found, among other things, that Shoffner "knew that the plaintiffs supported a political opponent or did not support his candidacy for sheriff." Trial Tr. at 593. Second, over plaintiffs' objection, the district court did not instruct the jury on punitive damages.

In returning its special verdict form, the jury found by a preponderance of the evidence that John and Alice Breeding had engaged in protected political activity and had not supported Shoffner's candidacy. The jury, however, declined to hold Shoffner liable, because it did not find that the Breedings' political affiliation (or lack thereof) was the substantial or motivating factor in Shoffner's decision to fire them.

On appeal, plaintiffs challenge four rulings: (1) the district court's summary-judgment decision in favor of Shoffner; (2) the court's decision to grant Shoffner a directed verdict with respect to the claims against him in his official capacity; (3) the portion of the jury instructions requiring plaintiffs to show that Shoffner knew they supported one of his political opponents or did not support his candidacy for sheriff; and (4) the district court's refusal to instruct the jury on punitive damages.

## II.

### A.

We review the district court's grant of summary judgment *de novo. See Sowards v. Loudon County,* 203 F.3d 426, 431 (6th Cir.2000). Summary judgment is proper only if the evidence submitted at that stage in the case demonstrates no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In applying this standard, we construe all evidentiary inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

To establish a *prima facie* claim of retaliatory firing for engaging in protected political activity, plaintiffs must show that: (1) they engaged in constitutionally protected activity; (2) the defendant took adverse action against them that would deter a person of ordinary firmness from engaging in the protected conduct; and (3) the adverse action was "substantially motivated" by the plaintiffs' protected conduct. *See Sowards,* 203 F.3d at 431. If the plaintiffs establish each of these elements, the burden shifts to the defendant to show that his employment decisions would have been the same irrespective of their constitutionally protected activity. *See id.* at 431. Lastly, even if plaintiffs can demonstrate that they were fired because of their political activity, the defendant must be given an opportunity to demonstrate that political affiliation is an appropriate requirement for the positions from which they were fired. *See Hall v. Tollett,* 128 F.3d 418, 423 (6th Cir.1997) (citing *Branti v. Finkel,* 445 U.S. 507, 518, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980)); *see also McCloud v. Testa,* 97 F.3d 1536, 1557 (6th Cir.1996) (listing categories of job positions for which political affiliation is an appropriate requirement under *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and *Branti* ).

A brief review of the pertinent evidence shows that the district court properly applied these requirements in dismissing seven of these claims as a matter of law.

*Cheryl Van Huss.* The chief jailer at the time she was terminated by Shoffner, Van Huss was a resident of Hancock, rather than Claibourne, County, and she accordingly could not vote in the sheriff election and did not campaign on behalf of any candidate. She was indifferent to the election's outcome, a fact that she did not share with either Shoffner or his associates, Lee and Payne.

*Mark Brock.* A canine officer for the sheriff's department since 1989, Brock admits that he did not campaign overtly on behalf of any candidate, nor did he ever discuss the election with Shoffner, Lee, or Payne. Nonetheless, he says he "didn't keep it a secret" that he supported Seals rather than Shoffner, and discussed the matter openly with friends and neighbors, as well as other officers during his shifts. He does not, however, link these discussions to Shoffner's decision to fire him.

*Birtie Daniels.* The jailhouse cook before she was fired, Daniels did not campaign on behalf of any candidate, nor did she inform any of them that they had her support. She also never spoke with Shoffner about the election. Like Van Huss, Daniels admits that she was indifferent to the election results and says she does not know why she was fired.

*Jay Partin.* A deputy in the department at the time he was fired, Partin did not participate in any candidate's campaign. He admits that he never had any conversations with Shoffner, or with any of Shoffner's associates, as to which candidate he was supporting. Instead, he testi-

fied that he discussed the issue with Phillip Johnson, another sheriff's department employee. Yet Partin did not introduce any evidence that Johnson conveyed this information to Shoffner or that Shoffner considered it in firing him.

*Russell Hampton.* A road deputy under Sheriff Seals, Hampton was not a resident of Claibourne County and could not vote in the sheriff election. He was not involved in any campaign and did not talk to anyone in the department about whom he supported.

*Kyle Brock.* An employee in the sheriff's department since 1988 and a deputy at the time he was fired, Brock did not have any meaningful political affiliation, and he did not have strong views on the sheriff race. He did not tell anyone in the sheriff's department which candidate he supported.

*Mary Jo Baird.* The chief dispatcher in the office, Baird did not participate in any campaign, and she did not tell Shoffner or his associates whom she supported for sheriff. Shoffner eliminated the chief dispatcher position when he took office, and Baird was not trained to perform any other position in the sheriff's department.

█ As this was the only relevant evidence produced on summary judgment, the district court properly concluded that these plaintiffs failed to establish a *prima facie* case of retaliatory firing. In particular, plaintiffs did not produce evidence that Shoffner knew of, much less was substantially motivated by, their failure to support him in his campaign for sheriff—thereby failing to satisfy the third prong of the retaliatory-firing test. *See Sowards,* 203 F.3d at 433–34.

At the district court, David Brown initially made slightly better headway. The court found that Brown's testimony—namely, that he had engaged in political

activity on behalf of Seals, and that Brown told Shoffner he would be voting for Seals—raised a genuine issue of material fact sufficient to establish a *prima facie* claim of political retaliation. In response to this evidence, Shoffner failed to show that political affiliation was an appropriate requirement for Brown's position as road deputy. However, the district court held that Shoffner was entitled to qualified immunity in his individual capacity, and allowed only the official-capacity claim to go forward. Although plaintiffs appeal this summary-judgment ruling, they offer no explanation why the district court's qualified-immunity ruling was mistaken. Accordingly, we affirm this decision as well.

**B.**

Plaintiffs next contest the district court's directed-verdict ruling, which dismissed the remaining three claims against Shoffner in his official capacity. In making this ruling, the court determined that the plaintiffs did not show that Shoffner had acted pursuant to county policy or custom in firing the plaintiffs. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

To establish a claim against a municipal official in his official capacity under *Monell,* the plaintiff must: (1) identify a municipal policy or custom; (2) connect that policy or custom to the municipality; and (3) show that the execution of the policy or custom caused a constitutional injury. *See Garner v. Memphis Police Dep't,* 8 F.3d 358, 364 (6th Cir.1993); *see also Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (noting that official capacity suits are treated as suits against the governmental entity and that a municipality's " 'policy or custom' must have played a part in the violation of federal law"). The only evidence offered by plaintiffs on this point is Shoffner's testi-

mony that he understood it to be a tradition in Claibourne County for new electees of certain county agencies to terminate the entire previous staff, then hire new employees. Plaintiffs did not submit any other evidence of county custom or policy.

■ This evidence does not satisfy *Monell*. Although the relevant custom need not have been formally approved by the appropriate decisionmaker under county law, *see Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997), the custom must be so prevailing that it has attained the "force of law," *see Doe v. Claibourne County ex rel. Bd. of Educ.*, 103 F.3d 495, 507–08 (6th Cir.1996). No rational factfinder could find that Shoffner's unsubstantiated reference to "tradition" met this standard. Nor do plaintiffs allege that Shoffner is a final municipal policymaker under Supreme Court precedent. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 482–83, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Under these circumstances, the district court properly dismissed the official-capacity claims against Shoffner.

Plaintiffs next challenge the district court's directed-verdict ruling on the ground that its timing was prejudicial to their case. In making this argument, however, plaintiffs offer no authority to support it. As it turns out, the terms of Federal Rule of Civil Procedure 50(a)(2) specifically contradict this contention. In the words of the rule: "Motions for judgment as a matter of law may be made at *any time* before submission of the case to the jury." (emphasis added).

## C.

With respect to the political-affiliation jury instruction, Shoffner argues as an initial matter that plaintiffs waived their objection to it by not re-noticing the objection after the district court read the charge to the jury. *See Murphy v. Owens–Illinois, Inc.*, 779 F.2d 340, 345–46 (6th Cir.1985). While we generally demand that a formal objection to the jury instructions be made both before and after the trial court gives the instructions, we have also recognized an exception for "when it is plainly apparent from the discussion between the parties and the judge that the judge was aware of a party's dissatisfaction with the instruction, as read to the jury, and the specific basis for that claimed error or omission." *Woodbridge v. Dahlberg*, 954 F.2d 1231, 1237 (6th Cir. 1992). In our view, plaintiffs' counsel met this standard and may challenge the instruction on appeal.

■ The instruction at issue said the following:

In order to prevail on this claim, the plaintiffs must prove each of the following facts by a preponderance of the evidence:

First, that the actions of the defendant were under color of the authority of the State of Tennessee.

Second, that the plaintiffs engaged in constitutionally protected activity, a form of free speech as previously defined, by supporting a political opponent or failing to support the candidacy of the defendant.

Third, that the defendant knew that the plaintiffs supported a political opponent or did not support his candidacy for sheriff.

Fourth, that such political activity was a substantial or motivating factor in the defendant's decision to discharge the plaintiffs from employment.

And fifth, that the defendant's acts were the proximate or legal cause of damages sustained by the plaintiffs.

Trial Tr. at 593. Because this language hews closely to the elements of a *prima facie* claim of political retaliation, *see Sowards*, 203 F.3d at 431, the instruction was not clearly erroneous. To be sure, as plaintiffs point out, *Sowards* does not say that the defendant's knowledge that plaintiffs engaged in protected conduct is a separate element of the claim. But such knowledge is a logical prerequisite to finding that plaintiffs' termination was substantially motivated by their engagement in constitutionally protected activity. After all, a defendant cannot terminate employees due to the exercise of their First Amendment rights in the absence of knowledge that they were doing any such thing. *See Thaddeus–X v. Blatter*, 175 F.3d 378, 387 n. 3 (6th Cir.1997); *see also Hall*, 128 F.3d at 426 (concluding that summary judgment for defendant was proper where plaintiff failed to put forth evidence showing that defendant knew plaintiff supported his political opponent).

### D.

Plaintiffs lastly contend that the district court should have instructed the jury on the issue of punitive damages. In view of our determinations above, however, the issue is moot.

### III.

For the foregoing reasons, we AFFIRM the district court's judgment.