**Robert RUSSO, Plaintiff–Appellant,**

v.

**Michael J. BUDD, in his individual capacity; Mahonig County, Ohio, Defendants–Appellees.**

No. 02–4253.

United States Court of Appeals, Sixth Circuit.

April 5, 2004.

Before MERRITT and DAUGHTREY, Circuit Judges; and HOOD, District Judge.*

MERRITT, Circuit Judge.

Plaintiff Robert Russo, a deputy sheriff in Youngstown, Ohio, appeals the district court's order granting summary judgment in favor of defendants Mahonig County Sheriff's Office, plaintiff's employer, and Michael Budd, also an employee in the sheriff's office. Plaintiff brought this case pursuant to 42 U.S.C. § 1983, claiming that his First Amendment right was violated when he was fired in retaliation for political activities. The district court, finding that no constitutional violation occurred, granted Budd's motion for summary judgment on the ground of qualified immunity and dismissed the claims against the County. We affirm the judgment in favor of defendants.

## FACTS

Plaintiff Russo and his father actively supported the campaign of former Mahonig County Sheriff Phil Chance in the 1996 general election in a successful race against the current Sheriff, Randall Wellington. Plaintiff's father served as Chance's campaign's treasurer in 1996. In 1997, Chance appointed plaintiff to the position of Deputy Sheriff. Chance was forced to resign after a criminal conviction for racketeering and extortion, and Wellington was subsequently elected to the position. Defendant Budd was appointed to the position of Major of Operations and Director of the Division of Internal Affairs for the Sheriff's Department by Sheriff Wellington. Plaintiff Russo stayed on as a Deputy Sheriff under Wellington after Chance's resignation.

* The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

In early 2000, while off-duty, plaintiff requested that a license plate number be investigated through the state's computer system, which may be used by police to access information on individuals, including criminal histories. Plaintiff was asked if he was making the inquiry for law enforcement purposes, and he responded that a suspicious car had been in his neighborhood. The database indicated that the license plate was registered to the husband of Vicki Sherlock, a Mahonig County Commissioner seeking reelection at the time. At no time, either before or after receiving the information on the license plate, did plaintiff report Sherlock's name or any suspicious activity to the police department.

Two weeks later, defendant Budd heard on a local radio show that Sherlock's license number had been run through the computer. Budd, as the Director of the Internal Affairs Division of the Sheriff's Department, began an investigation to determine who had sought this information. When Budd determined that plaintiff had made the inquiry, he ordered plaintiff to meet with him.

At his deposition, Budd testified that he did not believe that plaintiff was being honest about the reasons for obtaining information from the computer system, and that he believed that plaintiff wanted to use the information for political purposes. Budd claimed he became suspicious because, during the meeting, plaintiff gave conflicting information regarding his reasons for requesting the license plate check; and, despite claiming to have seen the car a number of times, plaintiff could not remember any details about the car, such as color, make or model. In addition, both Commissioner Sherlock and her husband, the only two people to drive the car in question, denied ever being in plaintiff's neighborhood or knowing where plaintiff lived.

Department policy required that the meeting was to be recorded. Budd recorded part, but not all, of the conversation. Plaintiff contends, and Budd concedes, that during the unrecorded portions of the discussion, Budd verbally attacked plaintiff and plaintiff's family, calling them "political hitmen" and "political dirty tricksters."

After reporting the results of the meeting to Sheriff Wellington, Wellington requested that plaintiff take a polygraph test concerning his reasons for requesting the information about the license plate. Plaintiff "failed" the polygraph test. This led Sheriff Wellington to order that a predisciplinary hearing be held before a neutral hearing officer. Both sides were given the opportunity to present evidence and cross-examine witnesses. At the conclusion of the hearing, the hearing officer concluded that plaintiff had committed all three of the so-called "D" violations with which he had been charged: Abuse of Position, Unauthorized Dissemination of Information and Failing the Truthfulness Directive. Because at the time, the prescribed punishment for a "D" violation was discharge, Sheriff Wellington discharged plaintiff in March 2000.[1]

Plaintiff grieved the termination and proceeded to arbitration. The arbitrator found that plaintiff had committed only two of the three charged violations. The arbitrator also found that the investigation was not conducted according to department policy because the interview with the Sherlocks, the owners of the car bearing

---

1. In May 2001, over a year after the events herein, the Sheriff's Department changed the rules to give the Sheriff discretion concerning the punishment imposed for "D" violations. No such discretion existed in March of 2000.

the license plate number run through the computer, was conducted over the phone and plaintiff's interview had not been recorded in its entirety. The arbitrator also concluded that Budd was unable to prove that plaintiff used the computer information gathered on the Sherlocks for political purposes. As a result, the arbitrator reinstated plaintiff without back pay and with loss of seniority.

## DISCUSSION

Plaintiff contends that he was discharged in retaliation for exercising his constitutionally protected right to political association. He contends that although Sheriff Wellington was the final decisionmaker in his termination, Wellington only "rubber-stamped" Budd's recommendation that he be terminated.

Plaintiff argues that his First Amendment rights of freedom of political association and expression were violated when Budd retaliated against him because of his support of the previous sheriff. To establish a *prima facie* claim of retaliatory firing for engaging in protected political activity, plaintiff must show that: (1) he engaged in constitutionally protected activity; (2) the defendant took adverse action against him that would deter a person of ordinary firmness from engaging in the protected conduct; and (3) the adverse action was "substantially motivated" by the plaintiff's exercise of his right of expression. *See Sowards v. Loudon County,* 203 F.3d 426, 431 (6th Cir.2000) (quoting *Thaddeus-X v. Blatter,* 175 F.3d 378, 394 (6th Cir.1999) (en banc)). If the plaintiff produces evidence that his protected expression was a substantial or motivating factor in the defendant's adverse action, the burden shifts to the defendant to prove that he would have made the same employment decision in absence of the protected conduct. *Id.; see also Mt. Healthy City*

*School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Van Huss v. Shoffner,* 81 Fed. Appx. 17, 19–20 (6th Cir.2003); *Priddy v. Smith,* No. 96–6160, 1997 WL 809954, *3 (6th Cir. Dec. 19, 1997).

Defendants do not contest that plaintiff has a right to support the political candidate of his choosing, thus satisfying the first element. As to the second element, we agree with the district court that Wellington, not Budd, held final decisionmaking authority over whether to fire plaintiff. Plaintiff claims that Wellington simply "rubber stamped" Budd's decision. Although Wellington clearly relied on information gathered by Budd, he also ordered an evidentiary hearing presided over by a neutral decisionmaker. Both sides were allowed to present evidence at this hearing, including the opportunity to present and cross-examine witnesses. The neutral decisionmaker found that plaintiff had committed three violations of department rules. Wellington then took that information and made the decision to fire plaintiff, which was the required course of action for plaintiff's infractions under department policy. As to plaintiff's allegation that Wellington was simply "rubber stamping" Budd's recommendation, plaintiff presented no evidence, other than his own opinion, that Wellington simply relied on Budd's recommendation.

Proof of the third element requires a causal connection between the adverse action and the protected activity. Plaintiff did not produce any evidence that Wellington knew of, much less was substantially motivated by, plaintiff's failure to support him in an election several years before. Plaintiff therefore fails to offer satisfactory evidence on the third prong of the retaliatory firing test.

Plaintiff failed to raise a genuine issue of material fact with respect to Wellington's

motivation for terminating him. He failed to produce evidence from which a reasonable jury could infer that his termination was motivated by his political activities. The evidence shows that Wellington terminated Russo for violations of department policy where termination was the prescribed penalty. A neutral decisionmaker, after a full-blown adversarial and evidentiary hearing, found that Russo had violated these rules. Plaintiff concedes in his brief that "[a]n independent investigation by the ultimate decision maker will break the required causal link." Pl. Br. at 16. That is precisely what happened here when Wellington ordered an evidentiary hearing presided over by a neutral decisionmaker. That neutral decisionmaker found that plaintiff had violated department rules. Wellington then relied on prescribed department policies and procedures in terminating plaintiff. Plaintiff presented no evidence that Wellington knew of his past political activities or that Budd had tainted or overly influenced Wellington's decision in this regard. In other words, plaintiff has not shown that Budd's improper motives, if they existed, should be imputed to Wellington.

Plaintiff essentially claims that he was fired at the recommendation of Budd, who had shown some animosity toward Russo based on Russo's political activities. To survive summary judgment, plaintiff was required to show some evidence either that Budd possessed authority to fire him or that Budd had so influenced Wellington's decision that Wellington could not make an independent decision. With respect to Budd, the causation element is missing. There simply is no evidence that any improper motivations on the part of Budd can be imputed to Wellington. Wellingon ordered a full blown adversarial evidentiary hearing conducted by an neutral decisionmaker. The decisionmaker found that Russo committed three serious violations warranting penalties that included termination under Department rules. Wellington simply executed those policies after reviewing the findings of the evidentiary hearing.

In the absence of a genuine issue of material fact as to causation, and because no constitutional violation occurred, we affirm the judgment of the district court as to Budd.

### Municipal Liability

Because we agree with the district court that no constitutional violation occurred, we affirm the *sua sponte* dismissal of Mahonig County. *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (municipality liable under § 1983 only when constitutional violation based on its policies or customs).

For the foregoing reasons, we affirm the judgment of the district court.