NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0555n.06

No. 14-1664

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| BLAIR LANGSTON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | **FILED** |
| | ) | Aug 06, 2015 |
| v. | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| CHARTER TOWNSHIP OF REDFORD, et al., | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| Defendants-Appellees, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| BILL SCHUETTE, | ) | |
| | ) | |
| Intervenor Defendant-Appellee. | ) | |

BEFORE: MERRITT and WHITE, Circuit Judges, and HOOD, District Judge.[*]

**HELENE N. WHITE, Circuit Judge.** Blair Langston (Langston) appeals the district court's grant of summary judgment to the Charter Township of Redford (Redford) and eleven Redford Police officers[1] in this action arising from the seizure and subsequent administrative forfeiture of money and a Breitling watch under the Michigan Controlled Substances Act (Act or CSA), M.C.L. § 333.7521, *et seq.* Bringing his claims under 42 U.S.C. § 1983, Langston requests declaratory and injunctive relief, arguing that the Act is both facially unconstitutional and unconstitutional as applied because it violates his substantive and procedural due process

---

[*] The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

[1] The individual defendants are Captain Kraig Brueck, Lieutenant Eric Pahl, Lieutenant James Turner, Sergeant David Holt, Sergeant David Quinlivan, Officer James Meade, Officer Eric Norman, Lieutenant Eric Gillman, Officer Kevin Jeziorowski, Officer Brian Jones, and Officer Brian Bommarito (collectively Redford officers).

rights under the Fourteenth Amendment, his Fourth Amendment protections against unreasonable search and seizure, his First Amendment right to petition, and his Fourteenth Amendment equal protection rights. We **REVERSE** the grant of summary judgment on Langston's as-applied procedural due process claim and his *Monell*[2] claim, and **AFFIRM** the decision of the district court on all other claims.

## FACTS

Beginning in March of 2007, Langston obtained the personal information of various American Express credit-card holders. He then called American Express posing as the cardholders, reported that the cards were compromised, and requested that new ones be sent to an address where he could access the mail. When the credit cards arrived, Langston took them and used them to purchase goods and services and to obtain cash. The Federal Bureau of Investigation (FBI) discovered the wire-fraud scheme sometime in 2008. Langston admits that he intentionally evaded law enforcement until his arrest on August 2, 2009.

The Redford Police Department began investigating Langston on July 24, 2009, after receiving a report that he was involved in domestic violence. Redford Police discovered that there were a number of existing warrants for Langston's arrest, including a warrant issued by the FBI for wire fraud and aggravated identity theft. Officer Eric Norman of the Redford Police contacted the United States Marshals (Marshals) to obtain assistance in conducting surveillance and arresting Langston.

On August 2, 2009, Marshals went to arrest Langston at his apartment, but Langston's friend saw the Marshals arrive and called Langston to warn him, leading Langston to gather his cash in a plastic bag and flee in a black 2009 Jaguar XS.[3] Langston was aware of the warrant for

---

[2] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

[3] Langston testified that he owned the car, but that it was not registered in his name.

wire fraud and assumed that was why the Marshals were there. A high-speed chase ensued, and Langston was arrested after he crashed and totaled his car. Langston was taken to the Redford Police Department where officers seized a silver Breitling watch, four or five cell phones, two diamond earrings, a wallet, a plastic bag containing $5,142 in cash, and Langston's identification, all of which were on his person or in the car at the time of his arrest. Langston received a receipt for these items. His car was also impounded.[4]

While in custody, Langston explained that he had large amounts of cash because he was preparing to pay his monthly rent and car note, and because he planned to enroll his daughter in Cranbrook School's preschool program.[5] When asked where the money came from, Langston conceded that he could not "really distinguish funds that were from illegal activities versus funds that are from legitimate activities." However, Langston's last regular employment was in 2003, and his "legitimate activities" consisted of investing in concerts, events, and club promotions with the money he obtained from his wire fraud. Langston claimed that he bought the watch using his credit card in January of 2009 at the Somerset Collection in Troy, Michigan.

On August 5, 2009, after Officer Jeziorowski's narcotics dog sniffed Langston's currency and indicated that it was positive for narcotics, Officer Jones served Langston with a notice of forfeiture. The notice stated that the currency and watch were seized pursuant to the CSA and further explained the claim and bond procedure:

> Since the total value of the seized property does not exceed $50,000, it is the intent of the seizing agency to forfeit and dispose of the above described property according to the provision of MCL 333.7521, et seq. If you or any person claiming an interest in the above described property wish to challenge the seizure and forfeiture of the property or wish to claim an interest in the property, you

---

[4] The record does not reveal whether the items other than the cash and the watch were returned, but they are not at issue in this appeal.

[5] Langston further explained that he had not yet begun the enrollment process, but had talked with Cranbrook staff three times about enrolling his daughter.

> must file a written claim with the seizing agency at the above address within 20 days of this notice (or the date of the first publication of this notice in the newspaper), AND you must give a bond[6] to the seizing unit of government in the amount of 10% of the value of the claimed property, but not less than $250.00 or greater than $5,000. Failure to file a claim of interest and bond within 20 days shall cause the listed property to be declared forfeited and disposed of according to law.

Langston also consented to a search of his home on the same day he was served with the notice. Officers found and seized a laptop, printer, and documents, including credit-card receipts and other papers related to the wire fraud, but no evidence of drug activity.

Langston testified at his deposition that after the search of his home revealed no drugs or drug paraphernalia, thus providing no support for a forfeiture under the CSA, he asked Officer Jones for his watch and cash back and Officer Jones responded that he would return the watch if Langston did not contest the forfeiture of the currency. Langston refused, demanding the return of all his seized property. Officer Jones responded that if Langston had additional money in a safe deposit box and told him where it was, Officer Jones would bring it back to the station and give half to Langston. Langston denied having any additional cash and asked again for his property; Officer Jones responded that he would have to speak to his supervisor because the Redford Police usually did not return money after it was seized.

The State charged Langston with offenses related to the domestic violence incidents and he was arraigned in the 17th District Court in Redford Township.[7] Because he would be in jail during the 20-day claim period, Langston asked his mother, Sheritta Langston (Ms. Langston), to make a claim for the cash and watch and post the required bond. Ms. Langston testified that

---

[6] The federal civil forfeiture provisions do not require that a bond be posted. "Any person may make a claim . . . without posting bond with respect to the property which is the subject of the claim." 18 U.S. Code § 983(a)(2)(E).

[7] Langston was also indicted on federal charges of wire fraud relating to the credit card scheme. He pleaded guilty and was sentenced to 51 months' imprisonment and ordered to pay $491,798.42 in restitution.

when she arrived at the police station,[8] she went to the station's lobby window with Langston's name[9] and explained that she was there to retrieve her son's property. The officer, whose name she did not recall, directed her to the Detective Bureau on the second floor. A male detective wearing a suit, whose name she also could not recall, spoke with her in the lobby. After looking up Langston's case on the computer, the detective told her that Langston's property was not at the police station and that she should contact the Marshals. Ms. Langston testified that she called the Marshals shortly after, but they too claimed not to have Langston's property. She told Langston that she was not able to collect his property, and he told her that he would ask someone else to try. The Redford Police assert they have no recollection or documentation of Ms. Langston's inquiry. On August 25, 2009, at the end of the 20-day claim period, Redford Police considered Langston's items administratively forfeited.

In his deposition, Lieutenant Gillman, who was in charge of logging and tracking forfeited items at the time Langston's property was seized, testified that notwithstanding that the notice of forfeiture clearly instructed interested parties to report to the Redford Police Department to file a claim of interest, the Redford Police did not accept bonds at the station's lobby window. Instead, at the direction of the Wayne County Prosecutor, all bonds were to be posted at the prosecutor's office. But, according to Lieutenant Gillman, the officer at the front

---

[8] The record includes conflicting timelines of when this occurred. In the original complaint and in his deposition, Langston claims that he called his mother on August 6, 2009 to explain the claim process and emphasized the 20-day limitations period, and that his mother and aunt went to the police station with the money the next day. However, in her deposition, Ms. Langston testified that she could not remember the date of her visit, but that it was after Langston was found guilty and sentenced, which would be after the August 25, 2009 deadline for filing a claim.

[9] Langston claims that he gave his mother the claim number, and that she told him that she presented it to the officer. However, she does not testify to this.

desk "might not have any idea what [the claimant was] talking about" if the claimant attempted to post bond.

Langston filed a four-count complaint on August 15, 2012, and a corrected amended complaint on September 27, 2012, alleging that the individual officers violated his Fourth Amendment rights by seizing and administratively forfeiting his money and watch without probable cause to believe that the property was related to drug activity (Count I); that the officers violated his Fifth and Fourteenth Amendment procedural and substantive due process rights in the way they carried out the administrative forfeiture (Count II); and that Redford Township had a forfeiture policy that violated Langston's Fourth, Fifth, and Fourteenth Amendment Rights (Count IV). Langston also requested a declaration that Michigan's administrative forfeiture law is invalid, facially and as-applied, because it does not provide any judicial review or relief. Redford and the Officers filed a motion for summary judgment; the State, as an intervenor, filed a motion for partial summary judgment; and Langston filed a cross-motion for summary judgment.

After a hearing, the district court granted Redford's and the officers' motion for summary judgment, granted the State's partial motion for summary judgment, and denied Langston's cross motion for summary judgment, finding that 1) M.C.L. § 333.7523 is facially valid because it provides notice and opportunity to be heard; 2) Langston's as-applied procedural due process claims failed because he did not prove the inadequacy of the available state-court remedies; and 3) Langston's Fourth Amendment claim failed because the Fourth Amendment does not provide a remedy for regaining property not returned after a search incident to a lawful arrest. Langston filed a motion for reconsideration, raising more than thirty claims of error, including that the district court failed to construe the facts in the light most favorable to him, erroneously

interpreted the CSA's forfeiture provisions and relevant case law, incorrectly limited Langston's facial challenge, wrongly excluded substantive due process analysis of Langston's claims, and erroneously determined that Redford's forfeiture customs and policies were proper. The district court denied the motion for reconsideration, finding that Langston merely restated the arguments he had already made. Langston timely filed this appeal.

## DISCUSSION

### I.     Standard of Review

"We review de novo a district court's grant of summary judgment." *Siggers v. Campbell*, 652 F.3d 681, 691 (6th Cir. 2011) (citation omitted). The standard of review is the same when reviewing cross-motions for summary judgment, but the court must be careful to "evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) (internal citations and quotations omitted).

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is "material" for the purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II. Standing and Jurisdiction

### A. Standing

The State argues that Langston lacks standing because he does not have a recognized, lawful interest in the property seized since he admitted in his deposition that the items were proceeds from his wire-fraud scheme. The district court disagreed, finding that Michigan law recognizes that persons with a possessory interest in seized items have standing to challenge the forfeiture. We agree.

To establish standing in federal court, a plaintiff must: 1) have "suffered an injury in fact, *i.e.,* a concrete and particularized, actual or imminent invasion of a legally protected interest"; 2) that is "fairly traceable to the challenged action of the defendant"; and 3) it must be likely "that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations and quotations omitted). In Michigan, as is the case in most federal forfeiture actions, "one who has a possessory interest in the *res,* with its attendant characteristics of dominion and control," has standing to contest a forfeiture. *In re Forfeiture of $11,800 in U.S. Currency*, 436 N.W.2d 449, 450 (Mich. Ct. App. 1989) (internal citations and quotations omitted). Further, Langston obtained legal title to the watch even if he purchased it with stolen money. *In re Newpower*, 233 F.3d 922, 930 (6th Cir. 2000) ("The good faith seller from which the thief purchases property intends to pass both title and possession of the property sold to the thief, and obtains good title to the money the thief provides. Accordingly, the thief obtains legal title to the goods purchased . . . .") (citing M.C.L. § 440.2403). There is no dispute that Langston purchased the watch and that he possessed the currency and the watch at the time of his arrest. Therefore, Langston has a sufficient interest in the watch and currency to establish standing to challenge the forfeiture.

### B. Jurisdiction and Abstention

Langston claims that the district court had jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343, and that this court has jurisdiction pursuant to 12 U.S.C. § 1291. The State argues that this court should abstain from deciding the facial challenge because Langston did not first bring a challenge in state court. However, Langston brings his claims under 42 U.S.C. § 1983, which does not require that a plaintiff exhaust state remedies before filing in federal court. "We reemphasize that § 1983 contains no judicially imposed exhaustion requirement . . . ." *Edwards v. Balisok*, 520 U.S. 641, 649 (1997). Still, this court may exercise its discretion to abstain from deciding this challenge. "In applying the doctrine of abstention, a federal district court is vested with discretion to decline to exercise or to postpone the exercise of its jurisdiction in deference to state court resolution of underlying issues of state law." *Harman v. Forssenius*, 380 U.S. 528, 534 (1965). However, abstention "contemplates that deference to state court adjudication only be made where the issue of state law is uncertain." *Id*. (citations omitted). "If the state statute in question, although never interpreted by a state tribunal, is not fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question, it is the duty of the federal court to exercise its properly invoked jurisdiction." *Id*. at 534-35. Here, the statute is clear with regard to judicial review and the due process afforded, and therefore the issues are properly and fairly before this court.

### III. Facial Challenge to the CSA's Administrative Forfeiture Proceedings

Langston first argues that M.C.L. § 333.7523 is facially invalid because it does not allow for judicial review of administrative forfeitures in violation of substantive and procedural due process under the Fifth and Fourteenth Amendments. The district court correctly found that contrary to Langston's assertions, the Michigan Supreme Court has held that judicial review of administrative forfeitures is available. *In re Return of Forfeited Goods*, 550 N.W.2d 782, 785

(Mich. 1996). Langston also alleges a facial challenge based on the lack of opportunity for indigent and incarcerated persons to file a claim and post a bond. However, as the district court held, that is a classic as-applied challenge. "In contrast to an as-applied challenge, which argues that a law is unconstitutional as enforced against the plaintiffs before the court, a facial challenge is not an attempt to invalidate the law in a discrete setting but an effort to leave nothing standing." *Speet v. Schuette*, 726 F.3d 867, 872 (6th Cir. 2013) (internal quotations and citations omitted). Thus, a facial challenge is an "exceptional remedy." *Carey v. Wolnitzek*, 614 F.3d 189, 201 (6th Cir. 2010). "Generally, to succeed in a typical facial attack, a plaintiff must establish that no set of circumstances exists under which the statute would be valid. Or, a plaintiff would have to establish that the statute lacks any plainly legitimate sweep." *Speet*, 726 F.3d at 872 (internal citations and quotations omitted). Although Langston labels multiple arguments as facial challenges, they are better characterized as as-applied challenges. Here we address only Langston's facial challenge based on the alleged lack of judicial review available under M.C.L. § 333.7523.

### A. The Statute

Mich. Comp. Laws § 333.7521 describes the property subject to forfeiture under the CSA. Relevant here, law enforcement officers may seize:

> Any thing of value that is furnished or intended to be furnished in exchange for a controlled substance, an imitation controlled substance, or other drug in violation of this article that is traceable to an exchange for a controlled substance, an imitation controlled substance, or other drug in violation of this article or that is used or intended to be used to facilitate any violation of this article including, but not limited to, money, negotiable instruments, or securities. To the extent of the interest of an owner, a thing of value is not subject to forfeiture under this subdivision by reason of any act or omission that is established by the owner of the item to have been committed or omitted without the owner's knowledge or consent. Any money that is found in close proximity to any property that is subject to forfeiture under subdivision (a), (b), (c), (d), or (e) is presumed to be

subject to forfeiture under this subdivision. This presumption may be rebutted by clear and convincing evidence.

M.C.L. § 333.7521(1)(f).  Property subject to seizure "may be seized upon process issued by the circuit court having jurisdiction over the property. Seizure without process may be made under any of the following circumstances: (a) Incident to a lawful arrest, pursuant to a search warrant, or pursuant to an inspection under an administrative inspection warrant."  M.C.L. § 333.7522(a). When property with a total value of $50,000.00 or less is seized without process, the seizing agency must notify the owner of the property in writing and also notify the prosecuting attorney for the county in which the property was seized, unless all criminal proceedings regarding the property have concluded.  M.C.L. § 333.7523(1).  Once an interested party receives notice of the seizure, he or she:

> may, within 20 days after receipt of the notice or of the date of the first publication of the notice, file a written claim signed by the claimant with the local unit of government or the state expressing his or her interest in the property.[10] Upon the filing of the claim and the giving of a bond to the local unit of government or the state in the amount of 10% of the value of the claimed property, but not less than $250.00 or greater than $5,000.00, with sureties approved by the local unit of government or the state containing the condition that if the property is ordered forfeited by the court the obligor shall pay all costs and expenses of the forfeiture proceedings. The local unit of government or, if applicable, the state shall transmit the claim and bond with a list and description of the property seized to the attorney general, the prosecuting attorney for the county, or the city or township attorney for the local unit of government in which

---

[10] The federal civil forfeiture provisions are similar, but provide at least a 35-day limitations period for filing a claim:

> (A) Any person claiming property seized in a nonjudicial civil forfeiture proceeding under a civil forfeiture statute may file a claim with the appropriate official after the seizure.
> (B) A claim under subparagraph (A) may be filed not later than the deadline set forth in a personal notice letter (which deadline may be not earlier than 35 days after the date the letter is mailed), except that if that letter is not received, then a claim may be filed not later than 30 days after the date of final publication of notice of seizure.

18 U.S.C. § 983(a)(2).

the seizure was made. The attorney general, the prosecuting attorney, or the city or township attorney shall promptly institute forfeiture proceedings after the expiration of the 20-day period. However, unless all criminal proceedings involving or relating to the property have been completed, a city or township attorney shall not institute forfeiture proceedings without the consent of the prosecuting attorney or, if the attorney general is actively handling a case involving or relating to the property, the attorney general.

M.C.L. § 333.7523(1)(c). If no claim is filed within the 20-day period, the property is considered forfeited. M.C.L. § 333.7523(1)(d).

### B. Procedural Due Process Claim

"To make out a claim for a violation of procedural due process, [Langston] has the burden of showing that (1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest." *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012) (citing *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006)). "Procedural due process generally requires that the state provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest." *Warren v. City of Athens, Ohio*, 411 F.3d 697, 708 (6th Cir. 2005). Exceptions to this general rule are tolerated only in extra ordinary situations. *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53(1993). Although the Court has determined that the seizure of real property does not present a sufficient exigency, "because [] personal property may be moved, immediate seizure is necessary in order to establish the court's in rem jurisdiction over the property, and . . . it is possible that [personal] property could disappear easily if the government had to give advance warning of the forfeiture action." *United States v. Any & All Radio Station Transmission Equip., Radio Frequency Power Amplifiers, Radio Frequency Test Equip. & Any Other Equip. Associated With or Used in Connection with the*

*Transmissions Within the FM Broad. Band, Located at 9613 Madison Ave., Cleveland, Ohio, 44102*, 218 F.3d 543, 550 (6th Cir. 2000) (citing *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663 (1974)). Thus, the CSA's lack of predeprivation process is not problematic, provided there is a postdeprivation opportunity to be heard.

Langston focuses his facial challenge on the lack of judicial review after an administrative forfeiture is effected, stressing that the Michigan Supreme Court has held that filing a claim and posting a bond within the 20-day statutory period "is the *only* means by which the statute confers jurisdiction on the circuit court." *In re Return of Forfeited Goods*, 550 N.W.2d at 785 (citing M.C.L. § 333.7523(1)(c)) (holding that circuit court had no jurisdiction over the merits of administrative forfeiture when Plaintiff did not make a claim or post bond within 20 days of receiving the notice of forfeiture)). However, Michigan courts have carved out an exception to this rule: "where the government gives improper notice to the property's owner and the property is forfeited by administrative proceedings, the trial court has jurisdiction to order its return." *Hollins v. Detroit Police Dept.*, 571 N.W.2d 729, 732 (Mich. Ct. App. 1997). We believe the Michigan courts would permit an action where police refused to accept the timely filing of a claim of interest.

Langston does not point to any authority that the statute, with the applicable judicial gloss, is constitutionally deficient, or that the 20-day statute of limitations is constitutionally inadequate, and we found no such authority. His facial due process challenge thus fails.

### C. Substantive Due Process

Although Langston labels some of his claims as violations of substantive due process, he did not make any separate arguments in support of the substantive due process claim and the district court did not rule on any such claims. *See Rosedale Missionary Baptist Church v. New*

*Orleans City*, 641 F.3d 86, 90 (5th Cir. 2011) ("The mere recitation of the vague words 'substantive due process' in one's complaint—without a word more of elaboration by either the parties or the court over the course of an entire trial—is insufficient to preserve such a claim on appeal."). The district court properly declined to review Langston's substantive due process claims.

Moreover, Langston would not prevail on his substantive due process claims even if they were properly argued. "Substantive due process affords only those protections so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (internal citations and quotations omitted). "Government actions that burden the exercise of those fundamental rights or liberty interests are subject to strict scrutiny, and will be upheld only when they are narrowly tailored to a compelling governmental interest." *Seal v. Morgan*, 229 F.3d 567, 574 (6th Cir. 2000). However, the list of fundamental interests is short and includes: the right to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, to terminate one's pregnancy, and possibly the right to refuse unwanted lifesaving medical treatment. *See Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). Langston does not claim that a violation of this type occurred here.

## IV. As-Applied Challenge

Langston next alleges that as applied to him, the CSA violates the substantive[11] and procedural due process guarantees of the Fourteenth Amendment because the statute does not provide an adequate opportunity for indigent, disabled, or incarcerated claimants to make a claim

---

[11] As was the case in his facial challenge, Langston does not make any separate arguments in support of his claim that his substantive due process rights were violated and we will therefore not address the claim.

for the return of their property, and, further, Redford Police refused to let his mother make a claim and post bond on his behalf. Langston additionally argues that Redford violated his Fourth Amendment rights by forfeiting his property without probable cause to believe that it was related to narcotics activity, as required under the CSA.

## A. Due Process

Langston asserts that he was indigent as a result of being incarcerated because he did not have access to his funds or financial instruments while he was in jail, and that the forfeiture violated his rights to due process and equal protection under the Fourteenth Amendment and his First Amendment right to petition. The district court held that Langston did not demonstrate a constitutional violation because he had contact with his attorney and his mother while in jail, and despite his claim of indigence, Langston's mother testified that she had the bond money when she went to the police station. Thus, the district court determined that Langston did not demonstrate the available procedures presented a due process violation.[12]

"If satisfactory state procedures are provided in a procedural due process case, then no constitutional deprivation has occurred despite the injury." *Jefferson v. Jefferson Cnty. Pub. Sch. Sys.*, 360 F.3d 583, 587-88 (6th Cir. 2004). "Plaintiff may not seek relief under Section 1983 without first pleading and proving the inadequacy of state or administrative process and remedies to redress [his] due process violations." *Id.* at 588. Here Langston describes his unsuccessful

---

[12] Langston's Fourteenth Amendment equal protection and First Amendment right to petition claims are not properly before this court. Langston did not raise the Equal Protection claim until his cross-motion for summary judgment and makes no separate arguments regarding this claim. And he first raised the claim that M.C.L. § 333.7523(1) violates the First Amendment right to petition by denying incarcerated claimants the right to challenge the forfeiture in his summary judgment motion. Langston does not argue on appeal that these claims were preserved or that they should have been addressed by the district court and we deem them forfeited.

efforts to file the claim and post the bond to demonstrate the inadequacy of the statute's procedural protections.

There is little doubt that Langston's incarceration and indigence made it difficult for him to obtain the funds necessary for the bond and to make the claim needed to trigger the statute's opportunity to be heard. However, under Michigan law, the bond requirement is waived for indigent defendants. "[T]he rules of Civil Procedure apply to drug forfeiture proceedings. MCR § 2.109(C)(1)[13] specifically provides for waiver of security upon showing of indigence, and when coupled with the forfeiture statute does not violate due process." *People v. Any & All Monies*, No. 185677, 1996 WL 33348848, at *2 (Mich. Ct. App. Nov. 12, 1996) (citing *In Re Forfeiture of 301 Cass*, 487 NW2d 795 (Mich. Ct. App. 1992)), and Langston could have mailed the claim and to the address provided in the notice.

Thus, Langston's indigence and incarceration, without more, are not sufficient to show that his due process rights were violated.

### B. Lack of Probable Cause for the Forfeiture

Langston alleges that the forfeiture—as distinct from the initial seizure, which he does not challenge—violated his Fourth Amendment rights because the officers had no probable cause to believe that he was involved in drug activity, and therefore no basis to initiate forfeiture under the CSA.[14] He further argues that because he was deprived of his property by an unreasonable second or continued seizure, his Fifth and Fourteenth Amendment rights to due process of law

---

[13] Currently found in MCR § 2.109(B)(1), the rule provides: "The court may allow a party to proceed without furnishing security for costs if the party's pleading states a legitimate claim and the party shows by affidavit that he or she is financially unable to furnish a security bond."

[14] To be subject to forfeiture under the CSA, the property must be something "of value that is furnished or intended to be furnished in exchange for a controlled substance, an imitation controlled substance, or other drug in violation of this article that is traceable to an exchange for a controlled substance . . ." M.C.L. § 333.7521.

were also violated. Redford responds that because officers had probable cause to arrest Langston and the search and seizure were performed incident to that lawful arrest, the subsequent forfeiture does not implicate the Fourth Amendment. The district court agreed, finding that under *Fox v. Van Oosterum*, 176 F.3d 342 (6th Cir. 1999), the forfeiture was not distinct from the initial seizure, which occurred incident to a lawful arrest.

In *Fox v. Van Oosterum*, this court held that the Plaintiff had no Fourth Amendment claim based on police seizing his wallet and refusing to return his driver's license contained in the wallet. *Id*. at 349-53. "The refusal to return the license here neither brought about an additional seizure nor changed the character of the [prior] seizure from a reasonable one to an unreasonable one because the seizure was already complete when the defendants refused to return the license." *Id*. at 350. "[T]he Fourth Amendment protects an individual's interest in retaining possession of property but not the interest in regaining possession of property." *Id*. at 351. "Once that act of taking the property is complete, the seizure has ended and the Fourth Amendment no longer applies." *Id*. Langston argues that *Fox* is inapplicable because here the forfeiture was under the CSA and was therefore distinct from the lawful seizure. He does not, however, point to any authority supporting this theory.

Because Langston's property was seized incident to his lawful arrest,[15] it was not seized in violation of the Fourth Amendment. For the same reason, his related Fifth and Fourteenth Amendment due process claims must fail.

---

[15] Warrantless searches and seizures are permitted incident to custodial arrests, either at the time the arrest is made, or later, when the arrestee arrives at the place of detention. *United States v. Edwards*, 415 U.S. 800, 803 (1974).

## V. Municipal Liability

Langston argues that Redford Township is subject to municipal liability because the wrongful forfeiture was carried out in accordance with policy, custom, and procedure that forfeited property 1) without probable cause to believe it was connected to narcotics activity and 2) failed to accept claims and bonds necessary for contesting the forfeiture. He further argues that even if the individual officers are not liable,[16] Redford can still be found responsible for the constitutional violations. Redford claims that it cannot be liable because Langston failed to establish a constitutional violation under the Fourth or Fourteenth Amendments.

*Monell v. Department of Social Services.*, 436 U.S. 658 (1978), established that municipalities are subject to liability under 42 U.S.C. § 1983 for deprivation of federally protected rights carried out in accordance with official policy or custom.

> Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable.

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-83 (1986). "However, local governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell*, 436 U.S. at 690-91. "A municipal custom may be established by proof of the knowledge of policymaking officials and their acquiescence in the

---

[16]"Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior." *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012). Because Langston does not identify the officers involved and concedes that finding personal involvement would be "impossible," he effectively concedes that there can be no individual officer liability and that summary judgment was properly granted with regard to his claims against the individual officers.

established practice." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 814 (6th Cir. 2005) (internal citations and quotations omitted). To establish municipal liability, Langston must: (1) identify a municipal policy or custom; (2) connect that policy or custom to the municipality; and (3) show that the execution of the policy or custom caused a constitutional injury. *See Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993).

### A. Wrongful Forfeiture

When counsel asked Officer Jones whether it "[w]as [] standard procedure to issue a notice of seizure with intent to forfeit [under the CSA] whenever you were made aware an arrestee had cash on them," Officer Jones responded: "I wouldn't say it was standard procedure. We commonly did that, but there was no procedure set in place." When pressed to state when a notice of forfeiture would not be issued, Jones replied "if [the arrestee] had a small amount of cash, $40 or something like that in the pocket with them, I doubt we're serving them on $40." When asked again whether "any time anybody had an amount of money that was substantial -- more than $40, you'd issue a notice of seizure with intent to forfeit under the Controlled Substances Act to that person?" Jones responded "[i]t's what we do. We don't have -- there was nothing written saying we had to do it, but that's, generally, what we'd do." Despite this testimony, Redford argues that such forfeitures were not routine because only a special unit of the police force, the Special Investigations Bureau, was authorized to issue notices of forfeitures. He further maintains that the uncorroborated testimony of Officer Jones is not sufficient to establish a custom and that Langston did not demonstrate that Officer Jones was vested with policymaking authority. However, policymaking authority is not required to demonstrate the existence of a custom. *See Monell*, 436 U.S. at 690-91. Redford claims that this case is like *Van Huss v. Shoffner*, 81 F. App'x 17, 22 (6th Cir. 2003), where this court found that

the testimony of a newly-elected sheriff on department "tradition" was insufficient to establish custom. The instant circumstances are distinct from *Van Huss* because there is no indication that Officer Jones is new to the Redford Police Department and therefore unfamiliar with its policy and customs.

Officer Jones's testimony is troubling, and municipalities should take care to operate within the confines of the law so as not to abuse their power, especially when acting under provisions as draconian as administrative forfeiture. However, the Michigan statute does not establish a federal constitutional right and Langston could have challenged the lack of connection to narcotics activity postdeprivation had he filed a claim in accordance with the statute. Thus, assuming an adequate showing of municipal responsibility, Langston has not shown that the alleged policy of ignoring the CSA's requirement that the property sought to be forfeited be connected to a controlled substance violates a federal constitutional right.

### B.  Refusal to Let Mother Make a Claim and Post Bond

Because Langston anticipated he would be in jail during the 20-day limitations period, he asked his mother to file a claim and post the bond.[17]  Langston alleges that unidentified Redford officers violated his due process rights when they refused to allow his mother to make a claim and post a bond on his behalf. Redford does not deny that this encounter occurred, but claims not to have any record of Ms. Langston's visit. Redford further argues that Ms. Langston's failed attempt to file a claim had no impact on the forfeiture because she attempted to file the claim after the 20-day statutory period had passed, at which point the property was already administratively forfeited. The record presents a question of fact regarding the timeframe of Ms.

---

[17] The district court opined that "it is not clear that Langston's mother could claim any interest in the property that would support filing a clam [sic] and bond on her own." However, it is not clear why this would be the case, as the claim was Langston's, not his mother's.

Langston's attempt to file the claim. Langston argues that his mother's deposition testimony demonstrates that she could not remember the specific dates. Further, Langston asserts that he told his mother that he would ask someone else to file the claim to ensure that a challenge was made before the 20-day period expired. In his deposition, Langston also testified that he discussed the forfeiture notice with his court-appointed counsel and his grandparents, and the attorney told him that the Redford police "were trying to conceal the property until the 20 days had expired." Although Langston does not provide a specific timeline, he argues that his testimony supports that his mother attempted to make the claim within the 20 days. In addition, regarding the sufficiency of Ms. Langston's effort to contest the forfeiture, she testified that at the very least, she identified whose property she was there to retrieve. A reasonable jury could conclude from Langston's testimony that his mother was confused about the timing and that she went to the police station and attempted to file a claim of interest within the 20-day period.

Redford's alleged refusal to accept the claim and bond on Langston's behalf raises a question of material fact as to whether Langston was deprived of due process. Under these facts, a reasonable jury could find that Langston (1) "had a life, liberty, or property interest protected by the Due Process Clause; (2) [] was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest." *EJS Properties, LLC*, 698 F.3d at 855 (citation omitted).

Further, a reasonable jury could find that Redford is liable based on Officer Gillman's testimony that Redford no longer accepted claims and bonds at the police station, despite the notice's direction to file claims there, and that officers would not know to instruct the claimant to go to the prosecutor's office instead. Redford responds that this practice does not "deprive claimants of a meaningful opportunity to be heard" and implies that it is appropriate because the

Wayne County prosecutor is "the office to which the claim and bond would ultimately be transferred for the purpose of instituting forfeiture proceedings." However, if, as is alleged here and testified to by Officer Gillman and Ms. Langston, officers at the station send claimants away without directing them to the prosecutor, the practice could interfere with a claimant's due process rights by depriving the claimant of an opportunity to file a timely claim.

Therefore, we reverse summary judgment for Redford on Langston's claim based on the refusal to accept the filing of a claim of interest.

## VI. Declaratory Judgment

Finally, Langston argues that the district court should have granted declaratory relief because "the state courts will not address systematic due process violations arising from the lack of judicial review provided in M.C.L. 333.7521, *et seq.* [and] the procedures result in an obviously wrong or unconstitutional conclusion." Langston does not make any separate arguments in support of this request. The district court denied Langston's request for declaratory relief after it found that Langston's facial and as-applied challenges failed.

"The Declaratory Judgment Act provides that a district court *may* declare the rights and other legal relations of any interested party seeking such declaration." *Travelers Indem. Co. v. Bowling Green Prof'l Associates, PLC*, 495 F.3d 266, 271 (6th Cir. 2007) (internal citations and quotations omitted). The district court has "discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Adrian Energy Associates v. Michigan Pub. Serv. Comm'n*, 481 F.3d 414, 421 (6th Cir. 2007) (internal citations and quotations omitted). Therefore, this court reviews the district court's decision to exercise jurisdiction over a declaratory judgment request for an abuse of discretion. *Scottsdale Ins. Co. v. Roumph*, 211 F.3d

964, 967 (6th Cir. 2000). Because the CSA's administrative forfeiture procedure does not lack judicial review, the district court did not abuse its discretion in declining to issue a declaratory judgment in Langston's favor.

## CONCLUSION

For the reasons stated above, we **REVERSE** the grant of summary judgment to Redford on Langston's as-applied procedural due process challenge based on the refusal to permit the filing of a claim of interest, and **AFFIRM** on all other grounds.